IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| JUSTIN GLYNN FRENCH | ) | Case No. 11-31954-DOT |
| | ) | Chapter 7 |
| Debtor | ) | Involuntary Petition |

**REPLY OF JUSTIN GLYNN FRENCH TO JULY 6, 2011 RESPONSES OF
TRUSTEE LYNN TAVENNER AND PARAGON COMMERCIAL BANK
TO FRENCH'S MOTION FOR RELIEF FROM REQUIREMENTS
OF FEDERAL RULE OF BANKRUPTCY PROCEDURE 1007**

Justin Glynn French, by counsel, respectfully represents:

1.  On May 20, 2011 Justin Glynn French, by counsel, sought relief from the requirements of Federal Rule of Bankruptcy Procedure 1007 as to the duties of a debtor to file schedules, statements and lists. He did so because he was an incarcerated prisoner and lacked the ability or the physical or financial resources to do so.

2.  The May 20 filing followed the weeks' earlier conversation between the undersigned counsel and counsel for the United States Trustee and petitioner Paragon Commercial Bank after the April 14, 2011 hearing that resulted in the appointment of a trustee for French. In that conversation French's counsel raised the obvious question of how the schedules, etc. could be prepared after the entry of an order for relief when French lacked access to the key documentation, lacked funds to prepare the documentation, and undoubtedly would be incarcerated following his May 3 sentencing.

3.  As of May 20, 2011 there had been no response from any party in interest to

W. R. Baldwin, III, VSB #16988
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA  23226
Voice:  (804) 285-3888
Fax:  (804) 285-7779
Counsel for Justin Glynn French

either the April 14 conversation or the follow up email from April 15, which outlined the issues in greater detail and made certain suggestions as to how the requirements of Rule 1007 could be addressed.

4.     On May 3, 2011, the United States District Court sentenced French to imprisonment for 192 months and directed that he be taken into custody immediately. The court denied the request of French's counsel that he be allowed to self-report to incarceration.

5.     Consistent with the vacuum in response from parties in interest that followed the April 14 conversation and the vacuum that followed the April 15 email from French's counsel submitted with the memorandum filed herein, as of June 16, 2011 the parties in interest likewise had made no reply to French's May 20 motion. Accordingly, on that date Counsel scheduled a July 13 hearing. And finally, following notice of that hearing, on July 6, 2011, the Trustee and Paragon Commercial Bank decided to file responses to French's motion. They oppose relief to French. While they have not suggested how French can comply with his duties to file these papers, they are sure that he should nonetheless be required to do so. They are even surer that they should not.

## THE TRUSTEE'S POSITION LACKS
## BOTH MERIT AND FACTUAL BASIS

6.     In her response the Trustee complains that "she has not been provided the normal and customary resources with which to exercise those duties as it relates to the Debtor's bankruptcy case." Response at 2, paragraph 3. To this Mr. French notes that the Trustee is not imprisoned, has not suffered forfeiture of virtually all of her property and, in any event, has not explained why the Trustee's status as an impecunious trustee justifies refusing Mr. French relief. However little assets the Trustee may have, Mr. French assuredly has less. Whatever restrictions

the Trustee may feel affect her duties, French as an incarcerated prisoner confronts more. He is incarcerated at FCI Gilmer, in Glenville, West Virginia. Even if he could obtain release for the purpose, French still would be 5 hrs and 36 minutes, 324.37 miles, from the Federal Courthouse in Richmond. The Trustee and petitioning creditor are some ten miles from the Richmond offices of the Federal Bureau of Investigation, which is the situs of many, if not most, of the electronic and papers files relating to Mr. French and his financial affairs. They are less than a mile from the offices of French's former general counsel (Florance Gordon Brown); they are perhaps eleven miles from French's former accountant, Morey Jones & Pfeiffer, PC.

7. The Trustee also states in her paper, same reference, that "to make matters even worse, as discussed hereafter, she has been denied the ability and/or access to critical resources." She goes on to make the following extraordinary statements:

> Notwithstanding a request, the Trustee has had no access to any of the documents held by the Federal Bureau of Investigation nor had access to even interview Mr. French. As a result she is not in a position to adequately address the matters before this Court or to effectively undertake the duties imposed upon her by the Bankruptcy Code. [footnote omitted]

8. While French's counsel, of course, is not a party to Trustee-FBI-U.S. Attorney conversations, to this counsel's knowledge the Trustee as of July 8, 2010 *never* had contacted the FBI agent who has custody of the French-related records to even so much as look at the documents, much less review them, despite having the necessary contract information. The April 15 French counsel email to counsel for the U.S. Trustee and Paragon Bank noted in paragraph 2 that the FBI had custody of pertinent documents and stated:

> If Paragon or the to be appointed interim trustee pursue this, please know that French consents to the disclosure of any and all of the documentation seized from his office to the Office of the US Trustee and to the trustee in French's case, except for any attorney-

>client documents the government may have identified and isolated. I will be pleased to write the FBI, or whoever, a letter to this effect when/if you so request.

Neither the Trustee nor Paragon Bank ever have made such a request.

9. On May 3, 2011 the undersigned emailed the Trustee (Exhibit A), provided a copy of the April 15 email and provided specific contract information as follows:

>The FBI agent who has custody of the French-related documents is Catherine Nowery, and she is available by email at Catherine.Nowery@ic.fbi.gov. I am copying her with this email to confirm Justin French's standing consent, if required, to the Trustee having access to all of these documents on whatever terms work for the Government and the Trustee.

10. On June 17, per declaration of S.A. Nowery under penalty of perjury filed in the French criminal case (No. 3:11-cr-00017), Exhibit B attached hereto, neither the Trustee or Paragon or anyone for them had so much as contacted S.A. Nowery to review the French-related documentation:

>2. As a result of FBI seizures and evidence voluntarily turned over by French, the FBI received more than 160 items. I estimate that approximately 100 of the remaining items consist of banker's boxes of documents. In addition to the paper documents, the FBI imaged the hard drives of multiple computers seized from French or his business entities. The computers themselves were returned and the image copies retained by the FBI. *I am not aware of any requests to review any of the seized documents and related materials.* [emphasis supplied]

On Friday July 8, after reviewing the Trustee's statements about having "no access" to the French documentation, the undersigned called S.A. Nowery and Ms. Nowery stated she still has not been contacted. So, when the Trustee states in her papers that she "has had no access to any of the documents held by the Federal Bureau of Investigation," this is simply because *the Trustee never has asked the FBI for this access*. When the Trustee doubled down on this position

4

(paragraph 6) by stating "[t]he United States has all of the documents related to the forfeited assets and has not provided the Trustee any access to the same," she omits that disclosure that the absence of this access is only because the Trustee has not, on this record, made the effort (a phone call!) necessary to accomplish the supposedly denied access.

11.     For nearly three months counsel for Mr. French has suggested to the petitioning creditors and to the Trustee that they contact the FBI to gain access to these documents and computer files. Rather than do this, the Trustee, who would need make a phone call and then travel all of ten miles to gain access, instead blames French. The complaint is that French, "a convicted felon, has not complied with the duties imposed upon him under Federal Rule of Bankruptcy Procedure 1007, which include the filing of the requisite statement of assets and liabilities." French admits this – that is why he has filed the instant motion because he has not to date complied and cannot comply with this duty.

12.     Going further, the Trustee implicitly attacks the honesty of French's contention that as an incarcerated debtor without assets he is unable to perform the duties of Rule 1007, using this language: "Instead, the Debtor has, through counsel, requested that this Court relieve him of such responsibilities because *he claims* he is unable to comply with the same" [emphasis supplied]. For the Trustee to question (saying of French that "*he claims*" is language of dispute, not agreement) French's inability to perform these duties while at the same time the Trustee says she "has had no access to any of the documents held by the Federal Bureau of Investigation," when she never has requested that access, is . . . inappropriate.

13.     Gong further, the Trustee also asserts she has not "had access to even interview Mr. French." Apart from the fact *the Trustee never has requested this counsel for that access*,

there is no explanation why the Trustee's lack of contact with French supports the contention that French is able to prepare the proper papers.

14. There is no way to be nice on this next point: the Trustee states "the Debtor is not willing to provide any information to the Trustee"; *that statement is false*. On May 3, following French's sentencing, the Trustee requested a copy of the financial affidavit French submitted to the United States Attorney in connection with his case; as Exhibit A demonstrates, she was sent that affidavit the same day. That email for whatever reason apparently did not arrive and so on May 12 the email was resent, with a copy to S.A. Nowery, and the Trustee replied, by email, "Receipt acknowledged." Exhibit C. Why the Trustee asserts "the Debtor is not willing to provide any information to the Trustee" when she has acknowledge receipt of requested information is not explained. On May 11 the undersigned emailed the Trustee [Exhibit D] to report he was holding a football helmet given to French by Darrell Green, a former Redskins' player.

15. If the Trustee, notwithstanding these two examples, stands by the assertion that "the Debtor is not willing to provide any information to the Trustee," counsel for Mr. French asks the Trustee to list, by date and detail, with copy of the pertinent communication (email, letter, etc.) each and every request for information from the Trustee that French or his counsel have refused to provide. This will be, counsel predicts, a short list.

16. In paragraph 9 of her paper the Trustee asserts "It is therefore entirely inappropriate at this juncture for this Court to relieve the Debtor of his statutory and Court ordered requirements to, among other things, file schedules under penalty of perjury and to testify at a meeting of creditors as required by the Bankruptcy Code." But French never requested that he be excused from testifying at a §341 meeting, and to make this statement

requires excision of part of French's memo submitted in support of the relief actually requested: "Subject to control of prison authorities, Mr. French is available for examination through formal judicial procedures and his failure to cooperate properly in this process would, presumably, provide cause for imposing an appropriate sanction under the Bankruptcy Code" [French memorandum in support at paragraph 12]. Further, *id.* at paragraph 14: "Mr. French does not seek to avoid being examined in due course with respect to his financial affairs and he does not seek to avoid performing the debtor's duties to the extent he is able to do so."

17.     The Trustee asserts in paragraph 4 that "[i]t is ridiculous to expect the Trustee to be burdened with the Debtor's duties and responsibilities" and she claims she is at even a greater disadvantage than French. As to the first point, the Trustee is arguing a point not pursued by French: he has not asked the Trustee to perform his duties. If anything is "ridiculous," however, it is the assertion that the Trustee is at a greater disadvantage than French, who is incarcerated 300 miles from Richmond and who, unlike the Trustee, cannot review FBI documents, cannot request forensic copies of computers and cannot visit with his former accountant and counsel.

18.     Finally, French notes the assertion that, other than "limited pleadings" filed in the criminal case of United States v. French, "[t]he Trustee has nothing else to utilize in connection with performing her fiduciary duties." Memorandum at paragraph 4. As previously noted, if the Trustee truly "has nothing else to utilize in connection with performing her fiduciary duties," and if she does not wish to coordinate with the FBI, accountants or former counsel, she could ask Paragon Commercial Bank, the petitioning creditor to provide assistance and take the action the Trustee is unable or unwilling to do. If the Trustee "has nothing else to utilize in connection with performing her fiduciary duties," this is because it is more facile to lambast French for

nonperformance of duties he cannot perform than to place a call to the FBI or take a ten mile drive.

## PARAGON BANK'S POSITION LACKS MERIT

19.     Paragon, following the Trustee, argues the straw man, and assert its opposition to relief French has not requested. Paragon states "this Court should not completely absolve Mr. French from his duty to prepare schedules and statements"; French has not requested this relief.

19.     Paragon argues "the burden or producing schedules and statements should not – as suggested by Mr. French – be shifted to creditors." Paragon, apparently, is unaware of extensive law – going back more than 110 years – that supports imposing on petitioning creditors the duty of preparing schedules and statements. For example, Bankruptcy General Orders IX, promulgated by the United States Supreme Court in 1898, provided:

### IX.

#### SCHEDULE IN INVOLUNTARY BANKRUPTCY.

> In all cases of involuntary bankruptcy in which the bankrupt is absent or cannot be found, it shall be the duty of the petitioning creditor to file, within five days after the date of the adjudication, a schedule giving the names and places of residence of all the creditors of the bankrupt, according to the best information of the petitioning creditor. If the debtor is found, and is served with notice to furnish a schedule of his creditors and fails to do so, the petitioning creditor may apply for an attachment against the debtor, or may himself furnish such schedule as aforesaid.

While the Bankruptcy Rules no longer provide that "it shall be the duty of the petitioning creditor to file" schedules, the Bankruptcy Courts retain this inherent power as reflected in the text of Rule 1007, even if undetected by Paragon Bank. Rule 1007 (b)(1) ("the debtor, *unless the*

8

*court orders otherwise*, shall file the following schedules, statements, and other documents"); Rule 1007 (k) ("the court may order the trustee, a petitioning creditor, committee, or other party to prepare and file any of these papers within a time fixed by the court"). In this Court, without researching the issue, Counsel is aware of the case of *Brandseed Media Commerce Group, LLC*, No 05-43431-DOT, where, when the involuntary debtor did not prepare schedules, etc., the Court "ordered that the petitioning creditor(s), by counsel, shall file the appropriate schedules, statement and lists as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules, together with a List of Creditors in the format specified by the Clerk's Office." Exhibit E.

## ADDITIONAL ISSUE

In preparation for resolution of this hearing the undersigned counsel has become aware of this Court's April 24, 2006 decision in *In re: Michael John Star*, Case No. 06-30571-DOT (Chapter 13). In that voluntary case the debtor requested exemption from the mandatory credit counseling requirements of Rule 1009(h) on the grounds of disability since he was incarcerated. Otherwise, since Rule 1000(h) provides that "an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition . . . received from an approved nonprofit budget and credit counseling agency" appropriate credit counseling."

While he has not yet researched the point, counsel for Mr. French doubts that applicable case law would allow an individual involuntary debtor to escape the provisions of Title 11 and accomplish the dismissal of his case by the simple mechanism of refusing credit counseling – notwithstanding the apparently unforgiving language of §109. Under this Court's decision in *In*

9

*re: Michael John Star,* French, despite his incarcerated status, is not "disabled" within the definition adopted by Congress.

Counsel simply notes this point for the present and will seek appropriate relief once he is able to determine a proper course of action.

## CONCLUSION

Contrary to the assertions made, the Trustee has access to pertinent computer and paper files sufficient to allow for the preparation of schedules, statements and lists. While it is undoubtedly true that the Trustee in this case will need to do more than simply read filed schedules and statements as is in a typical voluntary chapter 7 case, the actual work to be done is not much different from the coordination of a production of documents under Rule 7034 in a normal adversary proceeding.

Contrary to Paragon's assertions, there is ample authority for this Court to direct a petitioning creditor to perform the responsibility of preparing and filing the schedules, statements and lists. Debtor French is ready to review these documents, when and if they are created by those who have the physical capability of doing so.

Neither the Trustee or the petitioning creditor have made any effort to respond to French's informal efforts to resolve these issues and they did not respond on the record to French's formal effort to resolve these issues until July 6. As a result, while it is unfortunate that the Court must do so , French has no other option except to pursue this relief. The Trustee and Paragon Commercial Bank have created a zero sum game when they refused any discussion or coordination, would not travel to the FBI's Richmond office or even make a telephone call (or send an email) to the agent who has responsibility for these documents.

Mr. French did not seek bankruptcy relief as a debtor, but since that status has been imposed on him, he sees nothing improper in seeking the same discharge available to voluntary debtors. He does not believe the creditors or the Trustee should be able to force a result that would deprive him of this fundamental relief because he is incarcerated 300 miles away, while the Trustee will not review documents ten miles away and the Petitioning Creditor will not do the same or prepare schedules as petitioning creditors have been required to do for more than a century.

The Trustee and, particularly, Paragon Bank, have both the resources, the means and the physical ability to perform these actions – and Mr. French does not.

The requested relief should be granted.

                              Respectfully submitted,

                              JUSTIN GLYNN FRENCH

Dated: July 12, 2011                By:   /s/ W. R. Baldwin, III
                                                Of Counsel

W. R. Baldwin, III, VSB #16988
Marchant, Thorsen, Honey, Baldwin & Meyer, LLP
5600 Grove Avenue
Richmond, VA  23226
Voice:  (804) 285-3888
Fax:  (804) 285-7779
Counsel for Justin Glynn French

**CERTIFICATE OF SERVICE**

    I certify that on July 12, 2011, I served a true copy of the foregoing pleading by service through the ECF procedures of this Court on:

| | |
|---|---|
| C. Thomas Ebel, Esq. et al.<br>Sands Anderson PC<br>P.O. Box 1998<br>1111 E. Main Street, 24th Floor<br>Richmond, VA 23218<br>Counsel for Paragon Commercial Bank | Frank F. Rennie, IV, Esq.<br>Tessie O. Barnes Bacon, Esquire<br>CowanGates, PC<br>1930 Huguenot Road<br>P.O. Box 35655<br>Richmond, VA 23235<br>Counsel for Citizens Bank & Trust Co. |
| Robert A. Canfield, Esq.<br>Canfield, Baer & Heller, LLP<br>2201 Libbie Avenue, Suite 201<br>Richmond, VA 23230<br>Counsel For Franklin Federal<br>Savings Bank | Robert B. Van Arsdale, Esq. Ass't U.S.<br>Trustee<br>U.S. Courthouse<br>701 East Broad Street, Suite 4304<br>Richmond, VA 23219 |
| Lynn L. Tavenner, Esquire<br>Tavenner & Beran, PLC<br>20 North Eighth Street, Second Floor<br>Richmond, VA 23219 | |

and on all other parties and persons having noted their appearance herein.

                                                                     /s/ W. R. Baldwin, III